UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

RAHEEM DELANO FULTON,

    Petitioner,

v.

ALEJANDRO MAYORKAS, in his
official capacity as Secretary, U.S.
Department of Homeland Security,
PATRICK LECHLEITNER,
in his official capacity as Acting
Director of U.S. Immigration and
Customs Enforcement
THOMAS BROPHY, in his official
capacity as Acting Field Office Director,
Buffalo Field Office, Enforcement and
Removal Operations, U.S. Immigration
and Customs Enforcement, U.S.
Department of Homeland Security, and
MICHAEL BALL, in his official
capacity as Warden, Buffalo Federal
Detention Facility,

    Respondents.

25-CV-63 (JLS)

---

## DECISION AND ORDER

Petitioner Raheem Delano Fulton, a native and citizen of Jamaica, commenced this proceeding under 28 U.S.C. § 2241 on January 19, 2025. Dkt. 1. He seeks an order from this Court requiring Respondents to "cease all active efforts to remove [him]" from the United States unless the government can demonstrate that certain post-removal medical appointments have been scheduled for him. *See id.* ¶ 4. Fulton also moved for a temporary restraining order, Dkt. 3, seeking an

order that Respondents "cease any ongoing actions and refrain from taking any additional actions toward effectuating [his] removal" until "the Court has adjudicated his petition and complaint." Dkt. 3-1 at 2.[1]

For the following reasons, this Court does not have jurisdiction over Fulton's claims. As such, the Petition and Complaint are DISMISSED.

## BACKGROUND

### I. FACTUAL BACKGROUND

Fulton is a 39-year-old native and citizen of Jamaica who has been living in the United States since July 2003. Dkt. 1 ¶¶ 1, 14. He is currently detained at the Buffalo Federal Detention Facility ("BFDF"). *Id.* ¶ 1.

#### A. Arrest, Detention and Removal Proceedings

Fulton was arrested on February 6, 2021 for attempted burglary. *Id.* ¶ 17. On September 29, 2022, he was convicted of attempted burglary in the second degree under New York law and, on October 14, 2022, he was sentenced to three years in prison. *Id.* He ultimately served 30 months at Elmira Correctional Facility. *Id.*

On May 23, 2023, the United States Department of Homeland Security ("DHS") served Fulton with a Notice to Appear ("NTA") charging him as "removable" based on his criminal conviction. *Id.* ¶ 18. On August 25, 2023—at the conclusion of Fulton's sentence related to his criminal conviction—United States

---

[1] Page numbers refer to the CM/ECF stamped number in the header of each page.

Immigration and Customs Enforcement ("ICE") detained Fulton at BFDF, where he has remained since. *Id.* ¶ 19.

Fulton "applied for relief from removal," but his application "was denied by the Immigration Judge." *Id.* ¶ 20. And "the Board of Immigration Appeals ("BIA") affirmed the Immigration Judge's decision on May 2, 2024." *Id.* Fulton, therefore, has been subject to a final order of removal since May 2, 2024. Id. He is scheduled for deportation to Jamaica on January 30, 2025. *Id.* ¶ 31.

**B. Health Conditions**

Fulton suffers from End Stage Renal Disease ("ESRD"), a permanent medical condition where the kidneys can no longer function on their own. *Id.* ¶ 21. He requires dialysis three times per week to survive. *Id.* Without "regular dialysis treatment, he will experience electrolyte imbalances that may lead to shortness of breath due to fluid accumulation in the lungs, fatal arrhythmias, or heart blocks." *Id.* Fulton also "suffers from many complications related to his kidney disease." *Id.* Currently, he "receives dialysis three times a week on Tuesdays, Thursdays, and Saturdays for four hours each session." *Id.* ¶ 22. He also "receives regular doxercalciferol injections during his sessions to strengthen his bone health and takes Cinacalcet and calcium acetate medication regularly with his meals." *Id.*

According to Fulton, there is "no plan for continued medical care in Jamaica." *Id.* ¶ 31. In particular, he claims that ICE "has no dialysis scheduled for [him] in Jamaica on Saturday, February 1, 2025." *Id.* ¶ 32. Fulton submitted a letter from Dr. Sahar Amin recommending that Fulton "continues his treatment at ECMC

strictly as [his physicians] have optimized his care very diligently." Dkt. 1-1 at 1. Dr. Armin opines that Fulton "stands a great risk of rapid deterioration if he does not get this treatment." *Id.* Fulton believes, moreover, that the "Jamaican medical system is inadequate to meet [his] needs . . . ." Dkt. 1 ¶ 26 (internal citation omitted). He therefore faces "a severe threat to his health" if he were to be removed to Jamaica. *Id.* ¶ 25.

## II. PROCEDURAL HISTORY AND THE PARTIES' ARGUMENTS

Fulton filed his Petition and Complaint on January 19, 2025. Dkt. 1. He asserts the following claims:

1. An Administrative Procedure Act ("APA") claim based on ongoing detention without adequate medical care, which constitutes arbitrary agency action and violates the *Accardi* doctrine because Respondents must "apply and uphold the rules and regulations contained in the [Performance-Based National Detention Standards ("PBNDS")] . . . [and are] restricted from taking any actions that are arbitrary, capricious, an abuse of discretion, or not in accordance with law," and their "failure to abide by the PBNDS—particularly the standards indicating they must provide adequate medical clearance and medical planning in advance of removal—constitutes impermissible agency action . . . [and] constitute arbitrary and capricious actions" because they place him "at heightened risk of death" (*id.* ¶¶ 37-45);

2. A Fifth Amendment substantive due process claim based on removal that violates state-created danger doctrine because Respondents' "actions in

4

effectuating . . . removal without scheduled dialysis treatment on February 1, 2025, or any day thereafter is egregious and shocks the conscience" (*id.* ¶¶ 46-48); and

3. A Fifth Amendment procedural due process claim claiming that "[Respondents'] actions toward effectuating [Fulton's] removal without ensuring that he has scheduled dialysis treatment on February 1, 2025, or any day thereafter creates a substantial risk of an erroneous deprivation of [his] core interest in life and liberty. (*id.* ¶¶ 49-53).

Fulton seeks an order from this Court requiring "[Respondents] to cease all active efforts to remove [him] unless the government can demonstrate that he has a dialysis appointments scheduled for three times a week after his removal on January 30, 2025 for—at a minimum—the 30 days required by ICE's own standards." *Id.* ¶ 4. *See also id.* ¶ 3.

He also moved for a temporary restraining order, asking this Court to "order [Respondents] to cease any ongoing actions and refrain from taking any additional actions toward effectuating [his] removal" until "the Court has adjudicated his petition and complaint." Dkt. 3-1 at 2. Fulton argues that he "does not seek to challenge the order of removal that was entered against him or ICE's authority to remove him." *Id. See also* Dkt. 1 ¶ 3. Instead, "his claims assert that the effectuation of the removal order—by which [Respondents] have failed to provide any continuity in [his] access to dialysis—is in violation of" the PBNDS, the APA,

5

and the Due Process Clause of the Fifth Amendment to the United States Constitution. Dkt. 3-1 at 2-3. *See also* Dkt. 1 ¶ 3.

Respondents moved to dismiss, Dkt. 5, arguing that this Court "lacks jurisdiction to stop [Fulton's] removal." *See* Dkt. 5-1 at 4. Specifically, they urge this Court to "deny Petitioner's request for injunctive relief and dismiss the Petition" because "8 U.S.C. §§ 1252(a)(5) and 1252(g) bar this Court from enjoining [Fulton's] removal from the United States on the grounds [Fulton] raises." *Id.* at 7. Fulton opposed the motion to dismiss. Dkt. 7. Respondents then filed a combined supplemental opposition to Fulton's motion and reply as to their own motion. Dkt. 8.

For the reasons below, this Court lacks jurisdiction.

## DISCUSSION

Fulton argues that this Court has jurisdiction because he challenges the *manner* of his removal, rather than either the removal order itself or Respondents' authority to remove him. *See* Dkt. 3-1 at 16. Respondents, on the other hand, argue that 8 U.S.C. § 1252(g) strips this Court of jurisdiction to grant the relief Fulton seeks.

By statute:

> [n]otwithstanding any other provision of law (statutory or nonstatutory), including any . . . habeas corpus provision . . . no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision *or action* by the Attorney General to commence proceedings, adjudicate cases, *or execute removal orders against any* alien . . . .

6

8 U.S.C. § 1252(g) (emphasis added).[2]

The Supreme Court declined to construe Section 1252(g) expansively, in a way that would preclude "judicial review in deportation cases unless this section provides judicial review." *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999). Instead, the Court adopted a "narrower" construction and limited Section 1252(g) to the "three discrete actions that the Attorney General may take" set forth explicitly in the statute: "to 'commence proceedings, adjudicate cases, or execute removal orders.'" *Id.* (quoting 8 U.S.C. § 1252(g)) (emphasis omitted).

Applying Section 1252(g) as construed in *Reno*, the Second Circuit concluded: "[a] petitioner may not bypass the jurisdictional limitation of § 1252(g) to challenge the execution of a removal order 'because it was allegedly made based on unlawful considerations.'" *Troy ex rel. Zhang v. Barr*, 822 F. App'x 38, 39 (2d Cir. 2020) (quoting *Ragbir v. Homan*, 923 F.3d 53, 64 (2d Cir. 2019)).[3] *See also Bumu v Barr*, No. 6:20-CV-06742-EAW, 2020 WL 6465433, at *2 (W.D.N.Y. Nov. 3, 2020) (quoting and applying *Troy* to conclude that Section 1252(g) stripped the court of jurisdiction to stay removal). In other words, the *Reno* Court's narrow construction of Section

---

[2] Respondents also point to 8 U.S.C. § 1252(a)(5), which provides, in relevant part, that, "[n]otwithstanding any other provision of law (statutory or nonstatutory)... a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this chapter . . . ."

[3] To the extent that "the jurisdictional limit in § 1252(g) may be overcome by 'outrageous' government conduct," Respondents' alleged conduct here does not rise to that level. *See Troy*, 822 F. App'x at 39. *Cf.* Dkt. 5-1, 5-2, 8.

1252(g) does nothing more than limit that provision to its text. *See Vidja v. Whitaker*, No. 19 Civ. 613 (PGG), 2019 WL 1090369, at *4 (S.D.N.Y. Mar. 6, 2019).

The Second Circuit also has held that, based on jurisdiction-stripping provisions in Section 1252, "district court[s] lack[] jurisdiction over . . . indirect challenge[s] to an order of removal," as well as direct challenges. *Delgado v. Quarantillo*, 643 F.3d 52, 53 (2d Cir. 2011). *See also id.* at 55. The question of whether a lawsuit against immigration authorities challenges a removal order "turn[s] on the substance of the relief" sought. *Id.* at 55. *See also Yearwood v. Barr*, 391 F. Supp. 3d 255, 263 (S.D.N.Y. 2019) (applying *Delgado* to a petition that implicated Section 1252(g)).

Here, analysis of Fulton's claims and the temporary restraining order he seeks reveals that he asks the Court to intervene in Respondents' "action . . . to . . . execute [his] removal order[]." *See* 8 U.S.C. § 1252(g). Fulton asserts three claims: (1) an APA claim alleging arbitrary agency action; (2) a Fifth Amendment substantive due process claim asserting that Respondents' actions in effectuating his removal without scheduled dialysis treatment is "egregious and shocks the conscience"; and (3) a Fifth Amendment procedural due process asserting that removal without medical clearance violates his rights. *See* Dkt. 1 ¶¶ 37-53.

As for relief sought, Fulton asks the Court to enjoin Respondents from removing him from the United States without ensuring that he has scheduled dialysis treatment on February 1, 2025, and for, at a minimum, 30 days thereafter. *See id.* at 14. The letter from Dr. Armin, furthermore, recommends that Fulton

"continues his treatment at ECMC strictly as [his physicians] have optimized his care very diligently." Dkt. 1-1 at 1. And Dr. Armin opines that Fulton "stands a great risk of rapid deterioration if he does not get this treatment." *Id.*

Although framed merely as challenging the manner in which Respondents execute his removal order, Fulton's claims ultimately challenge their *discretionary decisions to deny him a stay of removal*,[4] and to remove him to Jamaica. Because his challenges arise from Respondents' "action . . . to . . . execute [his] removal order[]," Section 1252(g) divests the Court of jurisdiction to grant the relief sought. *See Yearwood*, 391 F. Supp. 3d at 263 (Section 1252(g) barred petitioner's claims because the "ultimate relief" sought—"an order returning him to the United States and preventing the respondents from detaining him or removing him during the pendency of any appeals—[was] a direct challenge to the order of removal, regardless of the fact that [he] frame[d] his claim as a challenge to the process though which he was removed"); *Frederick v. Feeley*, No. 19-CV-6090-FPG, 2019 WL 1959485, at *1, *4 (W.D.N.Y. May 2, 2019) (Section 1252 barred court from deciding petitioner's request to stay his order of removal because "his serious medical issues

---

[4] *See Rranxburgaj v. Wolf*, 825 F. App'x 278, 279, 281 (6th Cir. 2020) (applying *Reno* and concluding that the petitioner's challenge to "the agency's denial, on procedural grounds, of his application for a temporary stay of removal" arose from the Attorney General's decision or action to execute a removal order, and was in the realm of Section 1252(g)); *Moussa v. Jenifer*, 389 F.3d 550, 552–54 (6th Cir. 2004) (court lacked jurisdiction to decide petition challenging Attorney General's failure to grant the petitioner a stay of deportation, where the petitioner alleged that his "life [would] be at risk if he return[ed] to Syria because he [would] be without necessary medical care," because declining to issue a stay of deportation equated to a decision to execute a deportation order).

require costly medicine that [was] unavailable or unaffordable in Trinidad and Tobago"). Section 1252(g) bars the "equitable relief" Fulton seeks "because, if granted, the relief would undo his removal order." *See Yearwood*, 391 F. Supp. 3d at 263.[5]

Fulton relies on the Supreme Court's decision in *Jennings v. Rodriguez*, 138 S. Ct. 830 (2018)—as well as other cases including *Michalski v. Decker*, 279 F. Supp. 3d 487 (S.D.N.Y. 2018), and *Prado v. Perez*, 451 F. Supp. 3d 306 (S.D.N.Y. 2020)—to argue that this Court has jurisdiction to review his claims because he challenges the *effectuation* of his removal order rather than the removal order itself or ICE's authority to remove him. *See* Dkt. 3-1 at 12-16. But these cases are not on point. *See Jennings*, 138 S. Ct. at 840 (concluding that claims "arising from" actions taken or proceedings brought "to remove an alien from the United States" did not encompass all claims that merely resulted from the fact of being in custody, which it reasoned would have "staggering results"); *Prado,* 451 F. Supp. 3d at 312 (concluding that Section 1252(g) did not divest the court of jurisdiction over plaintiff's *Bivens* and related claims because it does not cover "claims arising from

---

[5] *Yearwood* is particularly relevant here, as it involved: "violations of [the petitioner's] Fifth Amendment procedural and substantive due process rights . . . and the Administrative Procedure Act" based on the respondents' alleged failure "to provide the petitioner with adequate medical care—specifically, adequate discharge planning." *Id.* at 257, 261. The *Yearwood* petitioner also claimed "to challenge only the manner and method of his removal"—in particular, "the manner in which he was removed violated the respondents' own regulations, the standards set forth om the respondents' Performance Based National Detention Standards, and the petitioner's Due Process rights." *Id.* at 263 & n.7. *See also Tavares-Tejada v. Mayorkas*, No. 22-CV-918 (JLS), 2022 WL 17413607, at *1 (W.D.N.Y. Dec. 5, 2022).

unlawful arrest or detention"); *Michalski*, 279 F. Supp. 3d at 495 (where petitioner sought "immediate release or an immediate probable cause hearing," concluding that, because the petition challenged "the extent of the Attorney General's authority to detain him as opposed to the Attorney General's exercise of discretion for the three enumerated types of decisions or actions, § 1252(g) [was] inapplicable"). *See also Asylum Seeker Advocacy Project v. Barr*, 409 F. Supp. 3d 221, 225–26 (S.D.N.Y. 2019) (concluding that *Jennings*'s "reasoning does not preclude the application of [a Section 1252 jurisdiction bar] . . . where Plaintiffs seek to temporarily bar the Government from executing removal orders it has *already* obtained, as such relief arises from the removal orders themselves").

In sum, this Court recognizes that habeas review of noncitizens' detention is not entirely foreclosed by 8 U.S.C. § 1252(g). But Section 1252(g) does foreclose this Court from granting Futon the relief he seeks: a stay of removal, which arises from "an action by the Attorney General to . . . execute removal orders." *See* 8 U.S.C. § 1252(g). The Court further recognizes that Fulton's situation is sympathetic on a human level. It has, therefore, endeavored to resolve this matter expeditiously to afford Fulton an opportunity to exercise any appellate rights prior to his scheduled deportation.

## CONCLUSION

For the reasons above, Respondents' [5] motion to dismiss is GRANTED. As such, the relief requested in the Petition and Complaint is DENIED and the Petition and Compliant are DISMISSED.[6] The Clerk of Court shall close this case.

SO ORDERED.

Dated:   January 24, 2025
         Buffalo, New York

                                                            _____
                                                            JOHN L. SINATRA, JR.
                                                            UNITED STATES DISTRICT JUDGE

---

[6] Accordingly, Fulton's [3] Motion for a Temporary Restraining Order is DENIED as moot.